**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

In re: Appeals of Christopher Denio    }
}
} Docket Nos. 159-8-00 Vtec
} and 250-11-00 Vtec
}
}

**Decision and Order**

Appellant Christopher Denio appealed from two decisions of the Zoning Board of Adjustment (ZBA) of the Town of Bennington, one denying his application to amend his zoning permit and the other upholding a notice of violation regarding the same property.

Appellant is represented by Alan B. George, Esq.; the Town of Bennington is represented by Robert E. Woolmington, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant owns a 106-acre parcel of property on the western slope of the Green Mountains, with access from Chapel Road through an existing gravel bed area by a gravel driveway. A portion of the property lies in the RR-80 zoning district, but the area above 1200' elevation lies in the Forest zoning district. The site of the residential building at issue in these appeals lies in the Forest zoning district, approximately 200 feet from the border of the Town of Shaftsbury[1].

Under the Zoning Bylaw in effect in 1992, the only private residential use allowed in the Forest zone was a private recreational camp, allowed as a conditional use under § 5.22. A " camp" is defined in § 1.3 of the Zoning Bylaw as " a building, not exceeding 800 s[quare] f[eet] building area and 20 feet building height, having no permanent foundation. In turn, " building area" is defined in § 1.2 as " the ground area enclosed by the walls of a building, together with the area of all covered porches and other roofed portions."

In addition to the general conditional use standards of § 3.4(3), the following specific requirements apply to such uses under § 5.22, among others not at issue in these appeals:

that the building not be used as a primary or secondary residence, but used occasionally for temporary shelter in connection with recreational activity;
that no sewage discharge from toilets (" black water" ) into on-site sub-surface disposal facilities shall be permitted (the regulations allow incinerating toilets, gas toilets, chemical toilets, mulching toilets, " mulbank" -type toilets and similar devices);

that a septic system to discharge grey water (household sewerage which comes from sinks, showers, washing machines or sources other than toilets) may be permitted when constructed in conformance with Chapter 5, Subchapter 10, parts II and III of the Vermont Health Regulations; and

that the applicant engage the services of a qualified engineer to perform soil and percolation tests and to develop a design plan of the specifications and installation of a septic system.

The Planning Commission approved a site plan and the ZBA issued a conditional use approval to Appellant for a 'camp' on the property above his gravel pit in December 1992. The ZBA required an "approved alternative toilet such as an incinerating toilet" and approved the proposed gray water system.

In 1993, Appellant placed a 10' x 44' mobile home on the property, installed the grey water system, and installed a small holding tank for the black water without obtaining approval for the holding tank as an 'alternative toilet.' He intended to use the mobile home while constructing the camp building. The mobile home, with a large attached porch, was inspected and received a certificate of occupancy in 1993. In or about 1995, without obtaining any permit amendment, Appellant constructed the 28' x 36' wood building at issue in the present case, and removed the mobile home. The former Zoning Administrator had advised Appellant that no permit amendment would be required. In fact, if the placement and occupancy of the mobile home was done under the authority of the 1992 permit, then the construction of the building should have required a permit amendment. The original permit does not appear to have been sufficiently specific to determine if a mobile home or a constructed building was authorized, and the failure to obtain an amendment would not be enforceable at this time if the building had been built in compliance with the original permit and the zoning regulations.

The building has a 7½ to 8-foot deep basement constructed of a poured concrete floor and mortared cement block walls. The building is placed on the basement walls but not tied in, nor are the basement walls tied in to the poured concrete basement floor. The building has a fully equipped kitchen and a low-flow toilet. A washing machine and dryer and water heater are installed in the basement. The building is heated by a wood-burning stove. The refrigerator, stove, washer and dryer and water heater are powered by propane gas. The building is not connected to a municipal or private distribution system for water, sewer, electricity or telephone services. Appellant maintains a residence in Shaftsbury, votes in Shaftsbury, serves on municipal boards in Shaftsbury and receives mail in Shaftsbury. Appellant spends as much time as he can at the building, mostly on weekends in the late spring, summer, and fall of each year. He spends little time at the building in the winter.

In 2000, Appellant applied to erect a pole barn near the building. The current Zoning Administrator also requested that he apply for an amendment to his 1992 permit to reflect the building as built. Appellant made the application on appeal here in Docket No. 158-8-00 Vtec, and in the course of the proceeding withdrew the request for the pole barn. After the ZBA denied the as-built application, the Zoning Administrator issued the Notice of Violation on appeal here as Docket No. 250-11-00 Vtec. The Notice of Violation required that Appellant remove the permanent foundation, decrease the building area to 800 square feet or less, cease using the structure as "a dwelling" and provide evidence that no black water is being discharged into the

ground on the site. It also imposed fines of up to $100 per day. In its trial memorandum, the Town requested the Court to declare that the property is in violation, and to allow the parties 60 days thereafter to discuss a plan to bring the property into compliance, after which, if no agreement is reached, the Town requests a briefing schedule on the remaining issue of an appropriate remedy and sanction.

The parties first dispute whether the "building area" is measured from the inside or outside surfaces of the walls. Although any ambiguity in the zoning regulations must be interpreted in favor of the landowner, we do not find any ambiguity in the definition. The ground area 'enclosed by the walls' includes the area occupied by the walls themselves, as well as the interior space. Thus, all measurements will be made from the exterior edge of the walls and will therefore measure what is ordinarily called the 'footprint' of the building.

The building area, including the area under the enclosed covered porches as required by the regulations, measures 1158 square feet of building area. This area exceeds the maximum allowed area by 358 square feet; that is, it is almost 45% larger than the maximum allowed size. The building therefore falls beyond the definition of "camp" in the zoning regulations and is not allowed in the Forest zone without being brought into compliance with the definition of "camp" as to the 800-square-foot-area requirement.

The building is located on a "permanent foundation" as that term is used in the definition of the term "camp." It is not necessary to resort to comparisons with the Aswan Dam or other massive structures to arrive at a commonly understood meaning of the term "permanent foundation." A basement with a poured concrete floor and concrete block walls is a "permanent foundation." The building therefore falls beyond the definition of "camp" in the zoning regulations and is not allowed in the Forest zone without being brought into compliance with the definition of "camp" as to the lack-of-permanent-foundation requirement.

The conventional low-flow toilet discharging into a holding tank fails to meet the condition of the permit that the building be equipped with an "approved alternative toilet such as an incinerating toilet," nor does it meet the requirements of § 5.22 of the Zoning Regulations that no sewage discharge from toilets is permitted into on-site sub-surface disposal facilities. To be allowed to keep the water-flush toilet and holding tank arrangement, Appellant must prove to the satisfaction of the Zoning Administrator that the tank does not discharge (and that no overflow from it would discharge) into the subsurface soils, and thereby obtain approval of the system as installed. The Town is willing to consider approval of the holding tank if it is uncovered, inspected by a Vermont-licensed engineer, and certified that it cannot discharge to the environment and that it otherwise complies with the Environmental Protection Rules (formerly the Health Department Rules, as required by § 5.22.

The Town also argues that Appellant's use of the building exceeds the definition of the term "private recreational camp," but rather that the building is being used as a secondary residence, if not as a primary residence. Unfortunately, the zoning regulations do not provide a definition of primary or secondary residence, to assist in distinguishing a "secondary residence" level of use from a "private recreational camp" level of use. Although the regulations do define a single-

family dwelling, that definition does not assist the Court in this particular task, because primary and secondary residences and camps may all meet that definition of a single-family dwelling.

Unlike the 'size' component or the 'lack-of-permanent-foundation' component of the definition of "private recreational camp," the 'use' component is hard to interpret and difficult to enforce, although we may all feel that we know it when we see it. The 'use' component is not cast in terms of the equipment, furnishings or amenities in the building (other than the lack of a 'permanent foundation'), nor is it cast in terms of the number of days of use, seasons of use, or regularity of use, nor is it cast in terms of the type of recreational activity with which the use must be associated (such as hunting or fishing, which have definite seasons). Rather, to qualify as a "private recreational camp" allowed in the Forest District, the building must <u>not</u> be used as a primary or secondary residence, and must be used only "occasionally" for "temporary shelter" in connection with any "recreational activity."

We take each of these criteria in turn. Appellant uses the building in connection with recreation in its broadest sense of renewal, by staying at it as much as he can, as a refuge from the world of work, rather than as a temporary shelter while hunting or fishing or snowmobiling or engaging in any other specific recreational activity. Appellant uses the building much more than the common meaning of the word "occasionally" as he uses it on weekends throughout the summer and fall, as well as during the week when he is able to get away. It is not his primary residence, as he votes, receives mail, engages in civic activities and conducts daily life from his residence in Shaftsbury. However, his level of use of the building has risen to the level of a secondary residence, that is, a weekend or vacation home.

We note for the parties' guidance, however, that it will be difficult to quantify the point at which a reduction in Appellant's use of the building would comply with the definition of "private recreational camp." As written, the regulations do not limit the home-like amenities that may be installed in a "private recreational camp," and they do not quantify the limits on the amounts of time that can be considered "occasional." The Town may wish to consider revising its regulations to address this problem for future cases. Meanwhile, any ambiguities in the regulations must be interpreted most favorably to the landowner.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the building at issue in these appeals is in violation of the Bennington Zoning Regulations and of the 1992 permit, as it exceeds the size limit for a private recreational camp, has a permanent foundation, and has an unapproved alternative 'black water' system consisting of a low-flow toilet discharging to an in-ground holding tank. It is also ORDERED and ADJUDGED that Appellant's use of the building exceeds the definition of "private recreational camp" in the Bennington Zoning Regulations in that it is used more than occasionally and is used as a secondary residence or vacation home.

Accordingly, as requested in the Town's memorandum, on or before March 25, 2002 (60 days from the date of this order), the parties either shall stipulate to and file with the Court a plan to bring the property into compliance, to be entered as a court order in this matter, or shall file memoranda on the remaining issue of an appropriate remedy and sanction. If such memoranda are filed, any responses to them shall be filed within ten days from their date of filing. The Court

will rule on the remedy based on those memoranda, without further oral argument unless requested by the parties.

    Dated at Barre, Vermont, this 23rd day of January, 2002.

_____

Merideth Wright
Environmental Judge

Footnotes

[1] It appears from the diagram in Exhibit 4 that Appellant may also own land over the Shaftsbury border. We make no findings as to whether this structure would comply with any zoning regulations in the Town of Shaftsbury, if moved over the Town border.